**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CAMILLE GROSDIDIER,** | ) | **Case No. 06-622C** |
| **Personally and as class representative** | ) | |
| **Plaintiffs** | ) | **Judge George W. Miller** |
| **v.** | ) | |
| **THE UNITED STATES OF AMERICA** | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Now comes the Plaintiff, by and through her undersigned counsel, and provides the following for her Opposition to the Defendant's Motion to Dismiss her individual and class action Complaint for lack of subject matter jurisdiction.

## I. INTRODUCTION

The kernel of the Defendant's argument is that because the Plaintiff has invoked the Back Pay Act and the Civil Service Reform Act (CSRA) in her Complaint, she is excluded from this Court's jurisdiction. The Defendant misconstrues the basis for jurisdiction in this case.

This civil action was not brought to contest any personnel action that is prohibited by the CSRA. Instead, the question here presented is whether the Defendant acted unlawfully and in violation of 22 U.S.C. § 1474(1) when it selected an "alien" instead of a suitably qualified U.S. Citizen ("citizen") for the positions at issue in the Complaint. The Defendant is simply in err when it argues that the Plaintiff asserts that the Defendant committed a prohibited personnel action that would give rise to Merit Systems Protection Board (MSPB) jurisdiction. Instead, the Plaintiff asserts that: 1) the Defendant violated

(and regularly violates) 22 U.S.C. § 1474(1) by hiring aliens over suitably qualified U.S. citizens; 2) the government's unlawful conduct deprived her and the class members the pay and benefits of the positions to which they were entitled but for the defendant's unlawful conduct; and 3) the Defendant's violation of law gives rise to money damages that the Plaintiff and class may recover by way of the instant Tucker Act action.

## II. LAW AND ARGUMENT

***The MSPB Does Not Have Jurisdiction Over the Present Claim***

The Defendant's first argument is that this Court is without subject matter jurisdiction because Ms. Grosdidier has a right of action before the MSPB. Def's Motion at 6. The Defendant's argument fails because the MSPB does not have jurisdiction to hear controversies involving the violation of 22 U.S.C. 1474(1).

The Plaintiff understands that in certain circumstances the CSRA grants the Merit Systems Protection Board jurisdiction over "prohibited personnel practices," as defined in 5 U.S.C. § 2302, and that failure to exhaust the remedies for contesting such a defined "prohibited personnel practices" would likely prevent an employee from litigating that claim before this or any court. *See, e.g., United States v. Fausto*, 484 U.S. 439 (1988)("the CSRA establishes the principles of the merit system of employment … and forbids an agency to engage in certain 'prohibited personnel practices," including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers."); *Pueschel v. United States*, 297 F.3d 1371 (Fed. Cir. 2002) ("the Court of Federal Claims does not have jurisdiction over a case that could be heard by the MSPB"); and *McClary v. United States*, 775 F.2d 280 (Fed. Cir. 1985) ("Where an employee is provided a means of redress under the CSRA, that is, an appeal to the [Merit

Systems Protection] Board, the employee does not have an independent cause of action in the Claims Court.").

This concession is, however, irrelevant to the current dispute. While it may be true that claims which can be brought to the MSPB may not first be brought to the Court of Federal Claims, it is also true that not all disputes regarding a personnel matter are subject to MSPB jurisdiction. *See Worthington v. United States*, 168 F.3d 24, (Fed. Cir. 1999):

> This court has noted that *Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA. The CSRA … does not encompass every adverse personnel action against a federal employee…. The Board's jurisdiction is not plenary, but limited to that conferred by law, rule, or regulation.

A review of the CSRA and the MSPB's jurisdiction-defining statutes and regulations demonstrates that the Defendant's violation of 22 U.S.C. § 1474(1) is not within the MPSB's jurisdiction.

The Defendant claims that the Complaint has alleged that she was subjected to "prohibited personnel practices" (as defined by the CSRA), that must be first submitted to the Merit Systems Protection Board for determination.[1] Despite the fact that the Plaintiff never alleged that she had been subjected to a "prohibited personnel practice,"[2] a

---

[1] *See* Def's Motion at p. 1 ("Ms. Grosdidier claims that the [Defendant] engaged in a prohibited personnel practices when it appointed non-United States citizens to positions for which [she] claims she … should have been appointed."); p. 3 ("Ms. Grosdidier's complaint, seeking a determination by this Court that the BBG engaged in prohibited personnel practices … plainly fall outside the scope of this Court's subject matter jurisdiction."); p. 6 ("Here, since Ms. Grosdidier is a Federal employee, and the alleged prohibited personnel actions involve promotions to new positions, Ms. Grosdidier has a right of action before the MSPB.").

[2] Ms. Grosdidier's cause of action is in no way reliant on a determination that she was subjected to a "prohibited personnel practice." While the Defendant claims that Ms. Grosdidier alleged that she had been subjected to "prohibited personnel practices" at

discussion of what constitutes a "prohibited personnel practice is necessary to determine the merits of the Defendant's motion. When it enacted the CSRA, Congress defined the term "prohibited personnel practice" in 5 U.S.C. 2302(b) as follows:

> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> (1) discriminate for or against any employee or applicant for employment—(A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16); (B) on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a); (C) on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)); (D) on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or (E) on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation;
>
> (2) solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of--(A) an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or (B) an evaluation of the character, loyalty, or suitability of such individual;
>
> (3) coerce the political activity of any person (including the providing of any political contribution or service), or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;
>
> (4) deceive or willfully obstruct any person with respect to such person's right to compete for employment;
>
> (5) influence any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;
>
> (6) grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

---

Paragraphs 16 and 21 of her Complaint (*See* Def's Motion at 1-2), the Plaintiff never contended that she was subjected to "prohibited personnel practices." In fact, the term "prohibited personnel practice" does not appear anywhere in the Complaint.

(7) appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative (as defined in section 3110(a)(3) of this title [5 USCS § 3110(a)(3)]) of such employee if such position is in the agency in which such employee is serving as a public official (as defined in section 3110(a)(2) of this title [5 USCS § 3110(a)(2)]) or over which such employee exercises jurisdiction or control as such an official;

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences-- (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; or (B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences -- (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

(9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of -- (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation; (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A); (C) cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law; or (D) for refusing to obey an order that would require the individual to violate a law;

(10) discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States;

(11) (A) knowingly take, recommend, or approve any personnel action if the taking of such action would violate a veterans' preference requirement; or (B) knowingly fail to take, recommend, or approve any personnel action if the failure to take such action would violate a veterans' preference requirement; or

(12) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation

> implementing, or directly concerning, the merit system principles contained in section 2301 of this title [5 USCS § 2301].

The Defendant has neither argued nor demonstrated that the Plaintiff's cause of action, based upon the Defendant's violation of 22 U.S.C. § 1474(1), fit into any of the "prohibited personnel actions" that Congress enumerated in 5 U.S.C. § 2302(b).

In addition to failing to demonstrate that the Plaintiff has alleged any "prohibited personnel practice" enumerated in 5 U.S.C. § 2302, the Defendant has additionally failed to demonstrate or to justify its contention that this cause of action would be included in either the MSPB's original or appellate jurisdiction. 5 C.F.R. 1201.3, which defines the MSPB's appellate jurisdiction includes only:

> (1) Reduction in grade or removal for unacceptable performance (5 CFR part 432; 5 U.S.C. 4303(e));
>
> (2) Removal, reduction in grade or pay, suspension for more than 14 days, or furlough for 30 days or less for cause that will promote the efficiency of the service. (5 CFR part 752, subparts C and D; 5 U.S.C. 7511-7514);
>
> (3) Removal, or suspension for more than 14 days, of a career appointee in the Senior Executive Service (5 CFR part 752, subparts E and F; 5 U.S.C. 7541-7543);
>
> (4) Reduction-in-force action affecting a career appointee in the Senior Executive Service (5 U.S.C. 3595);
>
> (5) Reconsideration decision sustaining a negative determination of competence for a general schedule employee (5 CFR 531.410; 5 U.S.C. 5335(c));
>
> (6) Determinations affecting the rights or interests of an individual or of the United States under the Civil Service Retirement System or the Federal Employees' Retirement System (5 CFR parts 831, 839, 842, 844, and 846; 5 U.S.C. 8347(d)(1)-(2) and 8461(e)(1); and 5 U.S.C. 8331 note, Federal Erroneous Retirement Coverage Corrections Act);
>
> (7) Disqualification of an employee or applicant because of a suitability determination (5 CFR 731.501);
>
> (8) Termination of employment during probation or the first year of a veterans readjustment appointment when: (i) The employee alleges discrimination because of partisan political reasons or marital status; or (ii) The termination was based on conditions arising before appointment and the employee alleges that the action is procedurally improper (5 CFR 315.806, 38 U.S.C. 4214(b)(1)(E));

> (9) Termination of appointment during a managerial or supervisory probationary period when the employee alleges discrimination because of partisan political affiliation or marital status (5 CFR 315.908(b));
> (10) Separation, demotion, or furlough for more than 30 days, when the action was effected because of a reduction in force (5 CFR 351.901);
> (11) Furlough of a career appointee in the Senior Executive Service (5 CFR 359.805);
> (12) Failure to restore, improper restoration of, or failure to return following a leave of absence an employee or former employee of an agency in the executive branch (including the U.S. Postal Service and the Postal Rate Commission) following partial or full recovery from a compensable injury (5 CFR 353.304);
> (13) Employment of another applicant when the person who wishes to appeal to the Board is entitled to priority employment consideration after a reduction-in-force action, or after partial or full recovery from a compensable injury (5 CFR 302.501, 5 CFR 330.209);
> (14) Failure to reinstate a former employee after service under the Foreign Assistance Act of 1961 (5 CFR 352.508);
> (15) Failure to re-employ a former employee after movement between executive agencies during an emergency (5 CFR 352.209);
> (16) Failure to re-employ a former employee after detail or transfer to an international organization (5 CFR 352.313);
> (17) Failure to re-employ a former employee after service under the Indian Self-Determination Act (5 CFR 352.707);
> (18) Failure to re-employ a former employee after service under the Taiwan Relations Act (5 CFR 352.807);
> (19) Employment practices administered by the Office of Personnel Management to examine and evaluate the qualifications of applicants for appointment in the competitive service (5 CFR 300.104); and
> (20) Reduction-in-force action affecting a career or career candidate appointee in the Foreign Service (Pub. L. 103-236, § 181(a)(2), to be codified at 22 U.S.C. 4010a).

Additionally, 5 C.F.R. § 1202.2 defines the MSPB's "original jurisdiction" to include only:

> (a) Actions brought by the Special Counsel under 5 U.S.C. 1214, 1215, and 1216;
> (b) Requests, by persons removed from the Senior Executive Service for performance deficiencies, for informal hearings; and
> (c) Actions taken against administrative law judges under 5 U.S.C. 7521.

The foregoing should make clear that the present cause of action was not contemplated as a "prohibited personnel practice" by the CSRA and was not assigned to the MSPB for determination. *See Worthington*, 168 F. 3d at 27 ("To determine the coverage of the CSRA, this court assesses the jurisdiction of the Board, the primary institution for adjudicating an employee's allegations of prohibited personnel practices under the CSRA. … Upon review of the relevant provisions, this court finds no law, rule, or regulation that gives the Board jurisdiction over Worthington's claim.").

The Defendant's argument that any and all personnel actions come under the MSPB's purview (Def's Motion at 5: "This court has repeatedly held that the MSPB possesses exclusive jurisdiction with respect to Federal personnel actions.") relies primarily on the Supreme Court's decision in *United States v. Fausto* 484 U.S. 439 (1988).

The plaintiff in *Fausto* was an Excepted-Service employee of the Fish and Wildlife Service who brought a claim in the Court of Federal Claims under the Back Pay Act as a result of a 30-day suspension. *Id.* at 440-42. The Supreme Court determined that Congress had prohibited judicial review of the employee's claim because the CSRA, which "creat[ed] an elaborate new framework for evaluating adverse personnel actions against federal employees," (*Id.* at 444 (internal citations omitted)): 1) specifically allowed for MSPB review of serious discipline of fourteen days or more, but 2) did not extend such review to Excepted-Service employees. *Id.* at 446-448. The *Fausto* Court specifically held:

> The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a

> congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.
>
> . . .
>
> Two structural elements important for present purposes are clear in the framework of the CSRA: First, the preferred position of certain categories of employees -- competitive service employees and "preference eligibles" (veterans). … The second structural element is the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, 5 U.S.C. §§ 1205, 4303(e), 7513(d), 7701 (1982 ed. and Supp. IV), and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review, § 7703.

*Id.* 448-49.

Unfortunately, the Defendant's Motion to Dismiss ignores well-established Federal Circuit Court of Appeals precedent that has limited *Fausto* only to those claims that are founded on the CSRA. These cases include *Worthington*, 168 F.3d at 27 ("*Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA."); *Romero v. United States,* 38 F.3d 1204, 1211 (Fed. Cir. 1994) ("*Fausto* does not hold that the CSRA makes impermissible judicial review of any action affecting federal employees. Rather, *Fausto* holds that the CSRA provides the only means of review as to the types of adverse personnel action specifically covered by the CSRA."); and *Bosco v. United States,* 931 F.2d 879, 883 (Fed. Cir. 1991) ("The Supreme Court did not rule that the CSRA provided the only means of judicial review of any actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically covered by the CSRA."

As was the case in *Worthingon, Romero and Bosco,* the *Fausto* decision does not prohibit this Court's exercise of subject matter jurisdiction here. *Fausto* is inapplicable for two reasons. First, in this case the Plaintiff's rights derive from 22 U.S.C. § 1474(1)

and not from any provision of the Civil Service Reform Act. Moreover, unlike reductions in grade and terminations (5 U.S.C. § 4303(e)) or serious discipline (5 U.S.C. § 7513(d), which were the subject of the *Fausto* case, the violation of 22 U.S.C. § 1474(1), has not been committed to the primacy of the MSPB by law or regulation. Accordingly, the reasoning underpinning the *Fausto* decision simply does not apply here. *See Worthington*, 168 F.3d at 27, *Romero*, 38 F.3d at 1211, and *Bosco*, 931 F.2d at 883.

As such, neither the holding of *Fausto*, nor its assertion that (in the circumstances there presented) the Court of Federal Claims was not an "appropriate authority," under the Back Pay Act to make a determination that the plaintiff has been affected by an unjustified or unwarranted personnel action, are applicable to this case. Therefore, this Court remains a proper authority to make an award pursuant to the Back Pay Act. *C.f. Worthington* 168 F.3d at 26("The Back Pay Act is such a 'money-mandating' statute [for the purposes of the Tucker Act] when based on violations of statutes or regulations covered by the Tucker Act"), *Romero*, 38 F.3d at 1211 ("There is no reason to suppose that the CSRA was intended to preclude this sort of action under the Back Pay Act and therefore Fausto is inapplicable."); *Adams v. United States*, 48 Fed. Cl. 602, 606 (Ct. Cl. 2001) (An appropriate authority [for the purposes of the Back Pay Act] is an entity having the authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action, including a court. **The appropriate authority in actions for back pay in this court can be either the court itself or some other entity.**") (**emphasis added**) (*citing Worthington* 168 F.3d 24, *Romero v. United States*, 38 F.3d 1204, and *Alaniz v. Office of Personnel Mgmt.*, 728 F.2d 1460 (Fed. Cir. 1984)); *Ainsworth v. United States*, 185 Ct. Cl. 110 (Ct. Cl. 1968)(under certain circumstances,

the Court of Federal Claims "is a 'proper authority' (within the language of section 3 of the Back Pay Act of 1966)") (partially superseded by statute as explained in *United States v. Fausto*, 484 U.S. at 454). There is simply no reason to suppose that the CSRA was intended to preclude this sort of action under the Back Pay Act.

***<u>Tucker Act Jurisdiction is Appropriate</u>***

The Defendant's second argument relies on its assertion that this Court's Tucker Act jurisdiction requires "an underlying statute that **upon its face** mandates compensation for damage sustained by an injured party." Def's Motion at 6 (**emphasis added**); *see also* Def's Motion to Dismiss at p. 4 ("The underlying remedial statute … must be **facially interpreted** as mandating compensation by the Federal Government for damages sustained to an injured party")(**emphasis added**). This argument is fatally flawed because it rests on an erroneous statement of the law. The Defendant's motion should be denied to the extent that it is reliant on this mischaracterization of the law. The true state of the law is explained below.

The Tucker Act grants the United States Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded either upon [*inter alia*] … any Act of Congress." 22 U.S.C. 1491(a)(1). The Tucker Act is Congress' unequivocal expression of its waiver of sovereign immunity, permitting the Court of Federal Claims jurisdiction to award damages upon proof of any claim against the United States founded either upon the Constitution, or any Act of Congress. *United States* v. *Mitchell* (Mitchell II), 463 U.S. 206, 212, 77 L. Ed. 2d 580, 103 S. Ct. 2961 (1983).

The Tucker Act, however, does not create "a substantive right enforceable against the Government by a claim for money damages." *United States v. White Mountain*

*Apache Tribe*, 527 U.S. 465, 472 123 S. Ct. 1126 (2003) (*citing United States* v. *Mitchell* Mitchell I)*,* 445 U.S. 535, 538-40, 100 S. Ct. 1349 (1980)). Instead, "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it "can **fairly** be interpreted as mandating compensation by the Federal Government for the damage sustained." *White Mountain Apache Tribe,* 527 U.S at 472 (citing Mitchell II, 463 U.S., at 217 and *United States v. Testan*, 424 U.S. 392, 400, 47 L. Ed. 2d 114, 96 S. Ct. 948 (1976)); *see also Michels v. United States*, 72 Fed. Cl. 426, 428-29 (Ct. Cl. 2006)*(*G. Miller, J.)("plaintiff must demonstrate that the source of law relied upon can fairly be interpreted as mandating compensation by the federal government for the damages sustained.")(internal quotation marks omitted).

There is no requirement that the remedial statute mandate money damages on its face, a point made crystal clear in the Supreme Court's decision in *White Mountain Apache Tribe*, 537 U.S. at 477 wherein the Court held:

> To the extent that the Government would demand an explicit provision for money damages to support every claim that might be brought under the Tucker Act, it would substitute a plain and explicit statement standard for the less demanding requirement of fair inference that the law was meant to provide a damage remedy for breach of a duty.

Far from the "facial" showing the government asserts as being required, the actual requirement of a "fair interpretation" means that **unless there are "affirmative reasons to believe no damages remedy could have been intended absent a specific provision" – there is a "fair inference that the law was meant to provide a damage remedy for breach of a duty**." *Id.* at 477 (**emphasis added**).

In the present case, under 22 U.S.C. § 1474(a)(1), the Secretary was under a duty to hire suitably qualified citizens when available for the positions identified in the

Complaint: "[T]he Secretary … may – employ … aliens within the United States and abroad for service in the United States relating to the translation or narration of colloquial speech in foreign languages or the preparation and production of foreign language programs **when suitably qualified United States citizens are not available when job vacancies occur**." (**emphasis added**). Had the Secretary not violated Section 22 U.S.C. 1474(a)(1), the Plaintiff would have been selected and would have been entitled to the pay of the position (Complaint ¶¶ 6 and 7). *See, e.g. Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) ("the statute is money-mandating because when the requirements of the statute are met-the member is entitled to compensation. … whatever procedural remedies were necessary to achieve that result, [t]he Court of Federal Claims is fully empowered to grant.").

The Defendant has failed to assert, argue or demonstrate the existence of "strong indications that Congress did not intend to mandate money damages"[3] that would require the Plaintiff to demonstrate "an explicit authorization of a damages remedy." *White Mountain Apache Tribe*, 537 U.S. at 478; and *C.f., Franklin Sav. Corp. v. United States,* 56 Fed. Cl. 720, 752 (Ct. Cl. 2003) (reflecting that there are two types of cases, those where the underlying statute imposes specific duties on the government which can fairly be interpreted as mandating compensation in and those cases where Congress has

[3] Such "strong indications" were found in *United States v. Testan*, 424 U.S. 392 (1976) and *Army and Air Force Exchange Service v. Sheehan*, 456 U.S. 728 (1982). These cases are inapposite here. Unlike the case here, where the Plaintiff has no avenue for administrative review of the Secretaries disregard of his nondiscretionary duty to hire suitably qualified citizens, in *Testan*, the employees were provided a prospective administrative remedy in the case of an incorrect classification (*Id*. at 403). Likewise, in *Sheehan*, there was a strong indication that Congress excluded the plaintiff from monetary damages because the Back Pay Act specifically excluded the category of employees (Air Force and Army Exchange Service personnel) to which the plaintiff belonged. 456 U.S. at 740.

provided 'strong indications' that it did not intend the source of substantive law to be money mandating).

Since there is no "strong indication" or "affirmative reason to believe" that Congress intended to preclude money damages for the secretary's violation of 22 U.S.C. 1474(1), and since that violation directly resulted in significant economic damages, the foregoing (in conjunction with the Back Pay Act or alone) meets the "fair inference that the law was meant to provide a damage remedy for breach of a duty." *White Mountain Apache Tribe*, 537 U.S. at 477. This is particularly so, given that if the Plaintiff's Tucker Act claim were to fail for lack of subject matter jurisdiction the Secretary will have been given the implicit ability to ignore the mandate of 22 U.S.C. § 1474(a)(1) with impunity.

## CONCLUSION

As the foregoing has demonstrated, this Court has jurisdiction to hear the current dispute. The Tucker Act supplies the requisite waiver of sovereign immunity, and 22 U.S.C. § 1474(1) alone, or in conjunction with the Back Pay Act (5 U.S.C. § 5596), provide the underlying remedial statute permitting money damages required to perfect Tucker Act jurisdiction. *See White Mountain Apache Tribe*, 527 U.S. at 472.

Wherefore, the Plaintiff (individually and on behalf of the class) respectfully requests that the Court deny the Defendant's Motion to Dismiss in whole.

Respectfully Submitted
ALDERMAN & DEVORSETZ, PLLC

/s/Leslie D. Alderman III
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
Tel. 202-969-8220
Fax 202-969-8224
lalderman@a-dlaw.com