# In the United States Court of Federal Claims

No. 06-622 C
Filed June 7, 2007
TO BE PUBLISHED

| | |
|---|---|
| CAMILLE GROSDIDIER, Plaintiff, v. THE UNITED STATES, Defendant. | Subject matter jurisdiction; Tucker Act, 28 U.S.C. § 1491(a)(1); Back Pay Act, 5 U.S.C. § 5596; 22 U.S.C. § 1474(1); authority to hire aliens for Voice of America when qualified U.S. citizens not available; money-mandating statute; whether statute is fairly amenable to reading that plaintiff has right to monetary damages in the event of violation |

Leslie D. Alderman III, Alderman & Devorsetz, PLLC, Washington, D.C., for plaintiff.

Leslie Cayer Ohta, Trial Attorney, Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Elizabeth A. Parish, Broadcasting Board of Governors, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff Camille Grosdidier filed a complaint on September 7, 2006, alleging that defendant, through the Broadcasting Board of Governors ("BBG"),[1] hired two aliens to fill positions with the Voice of America for which plaintiff, a citizen of the United States, had applied and was suitably qualified, in violation of 22 U.S.C. § 1474(1) (2000), which provides for the hiring of aliens to hold such positions when qualified United States citizens are not available. Defendant filed its motion to dismiss ("Def.'s Mot.," docket entry 6) on December 13,

[1] The BBG is an independent establishment within the executive branch. 22 U.S.C. § 6203 (2000), 5 U.S.C. § 104 (2000). It has oversight authority over several international broadcasting services of the United States Government, including the Voice of America.

2006. Plaintiff[2] filed her opposition to defendant's motion ("Pl.'s Opp'n.," docket entry 8) on January 22, 2007. Defendant filed its reply ("Def.'s Reply," docket entry 10) on March 5, 2007.

For the reasons set forth below, the Court concludes that it lacks jurisdiction over the subject matter of this action. Therefore, the Court grants the Government's motion to dismiss pursuant to RCFC 12(b)(1).

## *BACKGROUND*[3]

Plaintiff, a United States citizen and resident of Washington, D.C., is employed by the BBG[4] in Voice of America's French to Africa Service. Compl. ¶ 6. On May 22, 2002, plaintiff applied for a GS-13 International Radio Broadcaster ("IRB") position under Vacancy Announcement No. IBB-1-02-120. *Id.* She was deemed qualified for the position on June 20, 2002, and was later interviewed for it. *Id.* Ultimately, however, plaintiff was not selected for the position, which instead went to Henry Francisque, a citizen of Haiti. *Id.*

On February 13, 2006, plaintiff applied for another GS-13 IRB position under Vacancy Announcement No. M/P-06-27. *Id.* ¶ 7. Again she was deemed qualified and was interviewed for the position. *Id.* Again she was not selected for the position, which instead went to Timothee Donangmaye, a citizen of Chad. *Id.*

## *DISCUSSION*

### I. Standard of Review

Subject matter jurisdiction may be challenged at any time by the parties, the Court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). In considering

---

[2] Plaintiff states in her complaint that she has brought this suit as a class action pursuant to RCFC 23 on behalf of all those United States citizens who, within the six years preceding her action, applied for a position with the BBG, were deemed qualified, and were denied the position in favor of a non-citizen of the United States. Compl. ¶¶ 8–9. This matter has not, however, been certified as a class action and, in light of the Court's determination that it lacks subject matter jurisdiction over plaintiff's claim, it is unnecessary for the Court to consider whether class certification would be warranted. *See* RCFC 23(c).

[3] The facts set forth herein do not constitute findings of fact by the Court. All of the stated facts are drawn from plaintiff's complaint, and are either undisputed or alleged and assumed to be true for purposes of the pending motion.

[4] In her complaint, plaintiff refers to her employer as the "Board of Broadcast Governors." *See* Compl. ¶¶ 3–5, 9. The Court believes, however, that plaintiff intended to refer to the Broadcasting Board of Governors.

defendant's motion to dismiss, the Court must construe the facts in the complaint in the light most favorable to plaintiff, *see Nw. Airlines v. Trans. Workers Union*, 451 U.S. 77, 81 n.3 (1981) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), and accept any undisputed allegations of fact as true. *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).

Plaintiff is responsible for setting forth a jurisdictional basis for her claims. RCFC 8(a)(1) (the complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends."). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). "'The court should [then] look to plaintiff's factual allegations to ascertain the true nature of the claims' as well as 'to matters outside the pleadings' in deciding whether or not it has jurisdiction." *Cottrell v. United States*, 42 Fed. Cl. 144, 148 (1998) (quoting *Lewis v. United States*, 32 Fed. Cl. 301, 304 (1994)). Plaintiff, however, bears the ultimate burden of establishing subject matter jurisdiction over her claim. *See Reynolds*, 846 F.2d at 747; *Burgess v. United States*, 20 Cl. Ct. 701, 703 (1990).

## II. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim Because 22 U.S.C. § 1474(1) Is Not Reasonably Amenable to the Reading That It Is Money-Mandating

Like all federal courts, the United States Court of Federal Claims is a court of limited jurisdiction. *Phaidin v. United States*, 28 Fed. Cl. 231, 233 (1993); *Dynalectron Corp. v. United States*, 4 Cl. Ct. 424, 428 (1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. *See United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), constitutes a waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Tucker Act grants the Court jurisdiction over claims for money damages against the United States founded upon the Constitution, a federal statute or regulation, or upon an express or implied contract with the United States.

The Tucker Act does not itself create a substantive right of action enforceable against the United States. *Testan*, 424 U.S. at 398. Plaintiff must therefore identify another source of law that creates the substantive right and demonstrate that such source of law mandates compensation. *Mitchell*, 463 U.S. at 216–17. The other source of law must be "reasonably amenable to the reading that it mandates a right of recovery in damages." *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003)). If the Court determines that the source of law identified by

plaintiff meets the money-mandating test, it will "declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc). On the other hand, "[i]f the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Id.*

Like the Tucker Act, the Back Pay Act, 5 U.S.C. § 5596 (2000), "does not, itself, provide a statutory basis for invoking this Court's jurisdiction." *Sacco v. United States*, 63 Fed. Cl. 424, 428 (2004) (citing *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983)). Rather, "[t]he Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute." *Connolly*, 716 F.2d at 887. In order for this Court to have jurisdiction over plaintiff's claim, "some provision of law other than the Back Pay Act must first mandate, or at least be interpreted to mandate, money damages to an employee suffering an unjustified or unwarranted personnel action." *Sacco*, 63 Fed. Cl. at 428 (quoting *Walker v. United States*, 11 Cl. Ct. 77, 80 (1986)).

The Government argues that 22 U.S.C. § 1474(1) does not, on its face, mandate the payment of monetary damages in the event of a violation and, therefore, this Court does not have jurisdiction over the subject matter of plaintiff's claim.[5] Def.'s Mot. 6. Plaintiff argues that this Court has subject matter jurisdiction if a statute can be *fairly* interpreted as mandating compensation, as opposed to solely when the statute, on its face, mandates compensation. Pl.'s Opp'n 11–12. Plaintiff argues that, under 22 U.S.C. § 1474(1), the BBG had a duty to hire qualified citizens, rather than aliens, when a qualified citizen was available for the open position. Had the BBG not violated the statute, plaintiff argues, she would have been hired and would be entitled to be paid as a GS-13 federal employee. Therefore, plaintiff argues, the statute is money-mandating, and this Court has subject matter jurisdiction over her claim. Pl.'s Opp'n 12–14.[6]

---

[5] The Government also argued in its motion to dismiss that the Merit Systems Protection Board ("MSPB") has exclusive jurisdiction over allegations that a federal agency engaged in a "prohibited personnel practice" within the meaning of the Civil Service Reform Act of 1978, 5 U.S.C. § 2302(b) (2000). Def.'s Mot. 5–6. Plaintiff replied that: (1) she did not allege that BBG had engaged in a prohibited personnel practice, and (2) the MSPB does not have jurisdiction over claims arising from the violation of 22 U.S.C. § 1474(1), including her claim in this action. Pl.'s Opp'n 2–11 (citing, *inter alia*, *Worthington v. United States*, 168 F.3d 24, 26–27 (Fed. Cir. 1999)). Because the Court finds that it lacks jurisdiction to hear plaintiff's claim for damages founded upon defendant's alleged violation of 22 U.S.C. § 1474(1) on the ground that the statute is not money-mandating, the Court need not consider whether it lacks jurisdiction to hear plaintiff's claim because it is, in fact, a claim that BBG engaged in a prohibited personnel practice—a claim over which the MSPB has exclusive jurisdiction.

[6] Plaintiff further argues that, if this Court holds that it lacks subject matter jurisdiction, "the Secretary [of State] will have been given the implicit ability to ignore the mandate of 22 U.S.C. § 1474(a)(1) with impunity." Pl.'s Opp'n 14. Plaintiff's assertion appears to be

Plaintiff concedes that the statute does not mandate the payment of monetary damages on its face, but argues that *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003), requires the Government to show a "strong indication" that Congress intended that damages be precluded in the event the statute was violated, and that if the Government is unable to make this showing, the statute meets the "fair inference" standard. Pl.'s Opp'n 14 (quoting *White Mountain Apache Tribe*, 537 U.S. at 477).

Because 22 U.S.C. § 1474(1) is not facially money-mandating, the necessary inquiry becomes whether it is "reasonably amenable" to a reading that it gives plaintiff a right to monetary damages in the event of a violation, as alleged by plaintiff. *See Doe*, 463 F.3d at 1324. The Court finds that the statute is not reasonably amenable to such a reading. The statute provides:

> In carrying out the provisions of this Act, the Secretary, or any Government agency authorized to administer such provisions, may–
>
> > (1) employ, without regard to the civil service and classification laws, aliens within the United States and abroad for service in the United States relating to the translation or narration of colloquial speech in foreign languages or the preparation and production of foreign language programs when suitably qualified United States citizens are not available when job vacancies occur . . . .

22 U.S.C. § 1474(1). The statute provides for the hiring of aliens in the event that qualified United States citizens are not available to fill open positions. Although plaintiff is correct that, had she been selected for the position at issue, she would have received a commensurate pay increase, the Supreme Court of the United States has "explicitly rejected the argument that 'the violation of any statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages.'" *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 739 (1982) (quoting *Testan*, 424 U.S. at 401).[7] There is nothing in the statute that persuades this Court that the statute is reasonably amenable to a reading that it

---

contradicted by the filing of an of an institutional grievance by the American Federation of Government Employees "alleging that the BBG have been violating on a routine and continuing basis 22 U.S.C. § 1474 by hiring non-U.S. citizens in spite of the existence of suitably qualified U.S. citizens." *Wada v. Tomlinson*, No. 03-1488, 2007 WL 1378516, at *39 n.19 (D.D.C. May 9, 2007) (internal quotations omitted).

[7] Furthermore, this Court "cannot grant monetary relief for the loss of a position to which a federal employee has not been appointed." *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006) (citing *Wienberg v. United States*, 425 F.2d 1244, 1251, 192 Ct. Cl. 24, 35 (1970)).

mandates the payment of monetary damages in the event the Government hires an alien for a position of the type described when a qualified United States citizen is available.

Plaintiff relies upon the Supreme Court decision in *White Mountain Apache Tribe* in support of her argument that 22 U.S.C. § 1474(1) is money-mandating. While the Supreme Court held that a statute does not have to explicitly provide for monetary damages in order to be money-mandating, the facts of that case are very different from those presented here. The statute in that case provided that the Government held property in trust for the White Mountain Apache Tribe. *White Mountain Apache Tribe*, 537 U.S. at 475. The Supreme Court found that, because of the trust relationship created by statute, the Government had a fiduciary responsibility to properly administer the trust property. *Id.* The Supreme Court based its decision that the statute in question was money-mandating on the fact that under "general trust law" the Government's fiduciary responsibility gave rise to a right in the beneficiary to recover damages in the event the trustee violated its fiduciary duty. *Id.* at 477. If an explicit provision of damages were necessary for a statute to be money-mandating, such a requirement "would read the trust relation out of Indian Tucker Act analysis; if a specific provision for damages is needed, a trust obligation and trust law are not." *Id.* In this case, however, plaintiff has not pointed to any body of law, such as general trust law, outside 22 U.S.C. § 1474(1) that, together with the statute, would support her assertion that 22 U.S.C. § 1474(1) is money-mandating.

Similarly, plaintiff's reliance on *Fisher* is misplaced. *Fisher* dealt with 10 U.S.C. § 1201 (2000), which, in certain circumstances, permits the Secretary of a military department to retire an active-duty service member by reason of physical disability. 10 U.S.C. § 1201(a). Under the statute, when the Secretary determines a service member is unfit for duty because of physical disability, under 10 U.S.C. § 1201 the service member is entitled to disability retirement pay. *Fisher*, 402 F.3d at 1175 (citing *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed. Cir. 1991)). The Court of Appeals held that, under the statute, the "Secretary has no discretion whether to pay out retirement funds once a disability is found qualifying." *Id.* at 1174. Therefore, the court held, the statute was money-mandating. *Id.* Here there is no mandate requiring the payment of damages upon a showing that defendant has violated 22 U.S.C. § 1474(1).

## *CONCLUSION*

The statute that plaintiff contends defendant has violated is not reasonably amenable to the reading that it confers upon persons in plaintiff's position a right to money damages in the event the statute is violated. Thus, the statute is not money-mandating, and this Court lacks jurisdiction over plaintiff's claim. Accordingly, the Government's motion to dismiss under

RCFC 12(b)(1) is GRANTED. The Clerk is directed to enter judgment dismissing plaintiff's complaint without prejudice.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge